IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,     )
    )
    Plaintiff,     )
    )
v.     )     No. 3:09-CR-64
    )
RONALD THOMPSON-BEY,     )     (PHILLIPS/GUYTON)
    )
    Defendant.     )

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Motion of Defendant Ronald Thompson-Bey to Suppress [Doc. 115], filed on September 1, 2009, and motion to suppress statements [Doc. 118] (styled as Memorandum of Points and Authorities in Support of Motion of Defendant Ronald Thompson-Bey to Suppress), filed on September 2, 2009. The Court held an evidentiary hearing on these motions on November 3, 2009. Assistant United States Attorney Tracy L. Stone represented the Government. Attorney David H. Dupree appeared on behalf of the defendant, who was also present. At the conclusion of the hearing, the Government requested the opportunity to file a post-hearing brief and the Defendant requested the opportunity to respond. The Government filed a supplemental brief [Doc. 143] on November 13, 2009, and the Defendant filed a supplemental brief [Doc. 151] on November 27, 2009. The Court took the motions, the related filings, and the evidence under advisement on November 28, 2009.

1

# I. POSITIONS OF THE PARTIES

The Defendant stands indicted [Doc. 78] on a single count of conspiracy to distribute or to possess with the intent to distribute heroin from October 2008 to May 15, 2009. The Defendant argues [Docs. 115, 118, and 151] for the suppression of the evidence seized and any statements that he gave following a traffic stop on February 19, 2009, because the evidence and statements were gained in violation of the Fourth and Fifth Amendments. He contends that officers lacked probable cause to conduct a warrantless search of his rental car. He also argues that the officers could not search his car incident to his arrest because he was detained in the backseat of the police cruiser at the time. Moreover, he asserts that the evidence could not be properly seized pursuant to an inventory search because the officers did not comply with departmental policy regarding inventory searches. Finally, he maintains that any statements he gave were taken in violation of the Fifth Amendment because he was in custody but was not advised of his rights under Miranda.

The Government responds [Docs. 130 and 143] that the officers properly seized the evidence pursuant to an inventory search of the rental car driven by the Defendant. It also contends that officers properly searched the Defendant's car for evidence of drugs following and incident to his arrest on a warrant for drug crimes. With regard to the Defendant's statements, it states that the Government will not seek to use any post-arrest statement with the exception of the single, spontaneous remark regarding the contents of a Ziplock bag found in his luggage. It argues that this statement is admissible as a spontaneous utterance even though the Defendant was in custody and had not been advised of the Miranda warnings.

2

## II.  SUMMARY OF THE TESTIMONY

At the November 3, 2009 evidentiary hearing, the government called Trooper John Robe, who had worked for the Michigan Department of State Police since 2004.  Trooper Robe testified that on the night of February 19, 2009, he stopped the Defendant on I-75 for following too closely.  The Defendant was driving the car, his wife Esther McCalebb-Pippens was in the front passenger seat, and John Edward Smith was in a rear passenger seat.  Trooper Robe requested identification from the car's occupants.  The Defendant was the only occupant with a valid driver's license.  Mr. Smith gave Trooper Robe a Michigan ID card.  A computer check on Smith revealed that his driver's license was suspended.  Mrs. McCalebb-Pippins did not have any form of identification.  Trooper Robe's partner Trooper Kiser ran a computer check on McCalebb-Pippins and learned that she also did not have a valid driver's license.  A computerized criminal history check revealed that the Defendant was the subject of an arrest warrant for "dangerous drugs," which is a felony, issued by the Monroe County Sheriff's Department.

Trooper Robe stated that he asked the Defendant to get out of the car and engaged in "casual conversation" during the course of the traffic stop.  Trooper Robe subsequently arrested the Defendant on the felony warrant, handcuffed him, and placed him in the back of the patrol car. Trooper Robe then searched the passenger compartment of the car but found no contraband.  He stated that he opened the trunk of the car with a keyless remote and then searched it, finding three to five pieces of luggage.  He identified one of these pieces of luggage as belonging to the Defendant because prescription bottles with the Defendant's name on them were located inside.  Inside this piece of luggage, Trooper Robe found a clear plastic bag containing heroin and Oxycontin.  He documented these drugs on his police report, seized them as evidence, and sent them to a laboratory

3

for testing. The testing confirmed that the substance was heroin and showed that it weighed thirty-five grams. Trooper Robe found crack cocaine in another piece of luggage, which Trooper Robe determined belonged to Mr. Smith because it contained prescription bottles bearing his name.

Trooper Robe testified that the car driven by the Defendant belonged to the Hertz rental agency. The Defendant was named on the rental agreement. Trooper Robe stated that the Michigan State Police Department has an inventory policy. Under this policy, the car driven by the Defendant was a vehicle involved in a custodial arrest. Although the policy permitted Trooper Robe to release a vehicle to a passenger as long as the driver did not object and the passenger would not violate any laws in taking the vehicle, neither of the passengers in the Defendant's car could have assumed custody without violating Michigan law. Thus, Trooper Robe testified that the inventory policy required him to impound the car. Because the policy required the car to be impounded, it also required him to inventory the car to protect the police department. He stated that the policy required any items of an unusual nature or value and any evidence to be documented. The inventory policy required him to check all areas of the car that might contain property, including any containers. He said that this provision extends to the trunk of the car as long as the trunk can be opened without damaging it.

Trooper Robe testified that after searching the Defendant's car, he and Trooper Kiser entered the front seat of his patrol car. From the back seat, the Defendant claimed responsibility for the clear plastic bag that contained heroin and Oxycontin but denied responsibility for the crack cocaine contained in the other piece of luggage. Trooper Robe said that this statement was not in response to any questions from him or Trooper Kiser. After that, Trooper Robe advised the Defendant of his Miranda rights, but the Defendant declined to waive those rights. Then, Trooper

4

Kiser continued to ask the Defendant questions. At some point during the stop either he or his partner called for a tow truck. The tow truck subsequently arrived, and the Defendant's vehicle was impounded.

Trooper Robe testified about a video recording [Exhibit 1] from the camera in his patrol car. He noted that the date on the recording is incorrect because the camera needed to be reset and that the time was twenty minutes off. He stated that the stop actually occurred at 7:30 p.m. on February 19, 2009. While viewing the video recording with the Court, Trooper Robe testified that at approximately 19:16 hours, Trooper Kiser whispered to Trooper Robe that the Defendant had a felony drug warrant as Robe was talking to the Defendant. At 19:22:47, Trooper Robe told the Defendant that he had a felony drug warrant for his arrest. Trooper Robe secured the Defendant, arrested him, and placed him in the back of his patrol car. At 19: 27:15, Robe walked up to the car to begin searching the passenger compartment. No contraband was found in the passenger compartment. The other two occupants of the car stood in front of Trooper Robe's patrol car during the search. At 19:34:37, Trooper Robe opened the car's trunk with a keyless remote. At 19:37:18, Trooper Robe placed the luggage from the trunk of the rental car onto the hood of his patrol car and searched it. Mr. Smith was handcuffed after the officers found crack cocaine in his luggage.

Trooper Robe testified that at 19:39:30, Trooper Kiser removed a clear plastic bag containing pill bottles and the suspected heroin and Oxycontin from the Defendant's luggage. Trooper Robe testified that his patrol car did not have a cage separating the front and back seats. He said that the Defendant, who was sitting in the back seat of his patrol car, could see the search taking place on the hood of the patrol car. Trooper Robe stated that at 19:52:20, the Defendant claimed that the plastic bag was his. Neither he nor Trooper Kiser asked the Defendant any

questions before the Defendant made that statement. Trooper Robe stated that at 20:05:51 hours on the videotape, Star Towing arrived. He said that it would typically take Star Towing fifteen to twenty minutes to arrive at their location from the time the officers contacted the company.

On cross-examination, Trooper Robe testified that he was located in the turnaround on I-75, when he first saw the Defendant's car and determined that it was following too closely. He did not notice that the car's occupants were African-American at that time. He did not give the Defendant a ticket for following too closely but did give him a verbal warning. He recalled only the Defendant's name being listed on the rental agreement, which he received when he requested the Defendant's driver's license and registration. He acknowledged that he did not immediately arrest the Defendant upon learning of the Defendant's outstanding felony warrant from Trooper Kiser but, instead, continued his conversation with the Defendant because he did not believe it was "pertinent" to arrest him at that time.

Trooper Robe stated that Trooper Kiser checked Ms. McCalebb-Pippin's information on the computer by using her social security number, but he acknowledged that he personally did not see the computer results. After determining that neither Mr. Smith nor Ms. McCalebb-Pippin could drive the car, Trooper Robe did not ask any of the car's occupants if they could contact someone to remove the car. Although the inventory policy permits eighteen hours to elapse before an abandoned vehicle is towed, cars unable to be driven away by persons taken into custody must be moved within a reasonable time, which Trooper Robe believed to be one hour. Trooper Robe acknowledged that he did not offer the Defendant or the other occupants of the car driven by the Defendant a time frame in which to have the car moved.

6

Trooper Robe testified that he frisked all three of the car's occupants for weapons when he had them get out of the car. None of the three had any contraband on their person. The Defendant was placed in the back of the patrol car, which was parked eight to twelve feet behind the Defendant's car. Trooper Robe had the passengers, Ms. McCalebb-Pippin and Mr. Smith, step out of the car while he searched the passenger compartment. They sat on the bumper of the patrol car where the officers could watch them during the search. He stated that the trunk of the rental car was locked, but he determined that it could be opened without damaging the car. He said that the inventory policy required an officer to get a search warrant to open a locked trunk only if opening it would necessarily cause damage. After he discovered items that he thought were contraband in the luggage, he seized the items as evidence and secured them. He stated that after searching the trunk, he also searched under the hood of the car, which was latched, but did not find anything other than the normal components under the hood.

Trooper Robe stated that he has been familiar with the Michigan State Police inventory policy for the length of his career. He testified that prior to the Defendant's arrest, he had last reviewed the inventory policy following the Supreme Court's decision in Arizona v. Gant. Robe stated that after the Gant decision, the department relied upon the inventory policy "more heavily." He acknowledged that he did not record items of an unusual nature on Form UD-91, as required by the inventory policy, but stated that he did record them on his incident report.

Trooper Robe testified that he did not give the Miranda warnings to someone who was in custody unless he was going to question the person. He stated that after arresting the Defendant, he did not ask him any questions before he advised the Defendant of the Miranda warnings. Trooper Robe could not recall whether he or Trooper Kiser called the wrecker service

to tow the Defendant's car. The car was not searched again after it was towed, and a search warrant for the car was never obtained.

On redirect examination, Trooper Robe testified that he prepared his police report from memory within a week of the traffic stop and then compared his report to the in-car video footage, making any necessary changes. Beginning on page three of his report, Trooper Robe documents the items of unusual nature found in the Defendant's car, listing in detail where the item was seized. He stated that he followed standard procedure for securing the contraband discovered in the search by placing it in a temporary property locker at headquarters until his sergeant submitted it to the laboratory because the laboratory was not opened while he was on duty. Trooper Robe testified that the evidence in this case was submitted to the laboratory about eight days after the traffic stop, which is not unusual. He stated that he exercised his discretion to give the Defendant a verbal warning, rather than a ticket, for following too closely because he felt that the Defendant had bigger problems in the felony warrant and the items found in his car. Trooper Robe testified that based upon his prior experience with impounding rental cars, he knew that the preference of a rental company like Hertz was to have the car impounded if there was no licensed driver listed on the rental agreement who could take it. He stated that in this case, there was no licensed driver listed on the rental agreement who could take the car.

## III. FINDINGS OF FACT

The Court makes the following factual findings based upon the evidence presented at the suppression hearing: At approximately 7:30 p.m., on February 19, 2009, Trooper John Robe and his partner Trooper Kiser stopped a white Chevrolet Impala for following too closely on I-75.

8

Trooper Rober approached the car and requested identification from the occupants. The Defendant, the driver, gave Robe his driver's license and a rental agreement from the Hertz rental agency that bore his name. The front seat passenger Esther McCalebb-Pippin, the Defendant's wife did not have any identification. The backseat passenger John Edward Smith gave Robe a Michigan ID card.

Trooper Kiser conducted a computer check on the identification and learned that the Defendant had an outstanding arrest warrant for a felony drug charge and that Smith's driver's license was suspended. Trooper Kiser ran McCalebb-Pippin's social security number through the computer and learned that she did not have a valid driver's license. While Trooper Kiser was checking the computer records, Trooper Robe asked the Defendant to step out of the car, frisked him for weapons, and spoke with him about his travel plans. Trooper Kiser alerted Trooper Robe to the arrest warrant for the Defendant without the Defendant or the others hearing.

After speaking briefly with the Defendant, Trooper Robe asked the passengers to get out of the car and frisked them. No weapons were found on any of the car's occupants. Trooper Robe arrested the Defendant on the warrant, handcuffed him, and placed him in the back of the patrol car, which was parked about twelve feet behind the Defendant's rental car. Based upon the Court's review of the video recording [Exhibit 1], approximately eleven minutes elapsed between the stop of the car and the handcuffing of the Defendant. The officers asked the passengers to sit on the front bumper of the patrol car, and then Trooper Robe searched the passenger compartment of the rental car. No contraband was found. Trooper Robe next opened the trunk of the rental car with a keyless remote and searched it. Luggage located inside the trunk was moved to the hood of Trooper Robe's car and searched there. The officers discovered crack cocaine in a piece of luggage that also contained prescription pill bottles addressed to Mr. Smith. The officers arrested Smith at

9

that point. Another piece of luggage contained a clear Ziplock bag holding prescription pill bottles bearing the Defendant's name and drugs that the officers believed were heroin and Oxycontin.

Following the search, the officers entered the front seat of the patrol car. The Defendant, who was sitting in the rear of the patrol car from which he had a clear view of the search of the luggage on the hood, claimed the clear bag containing drugs was his. The officers did not ask the Defendant any questions from the time they entered the car until the Defendant spoke. Trooper Robe subsequently advised the Defendant of his <u>Miranda</u> rights, and the Defendant declined to waive those rights. Approximately forty minutes after the Defendant was handcuffed, Star Towing arrived and towed the rental car to an impound lot. The car was not searched again thereafter. Sometime during the following week, Trooper Robe prepared an incident report about the stop, documenting the contraband found in the search of the trunk.

## IV. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The Defendant challenges the warrantless search of his rental car, contending that (1) the car could not be searched incident to his arrest as he was detained in the backseat of the police cruiser and not within reach of the car, (2) even if the passenger compartment of the car could be searched incident to his arrest, the trunk could not, and (3) the searching officers did not comply with the inventory policy in conducting the search. The Defendant also argues that his post-arrest statements should be suppressed because he was not advised of his rights under <u>Miranda</u>. The Court will address each of these issues in turn.

## A.  Search of Defendant's Car

The Defendant's rental car was stopped for a traffic violation on February 19, 2009, and, subsequently searched.  Officers found illegal drugs in luggage located in the trunk of the vehicle.  The Defendant seeks the suppression of this contraband, arguing that the warrantless search of the car violated the Fourth Amendment.  The Government contends that the officers properly searched the car, including the trunk, pursuant to a felony drug arrest warrant for the Defendant or, alternatively, while inventorying its contents prior to impounding the vehicle.  In order for the instant search to pass Fourth Amendment muster, it must fall within one of the narrowly drawn exceptions to the warrant requirement.  See Katz v. U.S., 389 U.S. 347, 357 (1967) (holding that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions"); Jones v. U.S., 357 U.S. 493, 499 (1958) (observing that "[t]he exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn").  Accordingly, the Court will examine whether the drugs were properly seized pursuant to an "evidence-gathering" search incident to the Defendant's arrest on a felony drug warrant or pursuant to an inventory search of the car prior to its impoundment.

*(1) Search Incident to the Defendant's Arrest*

As an exception to the Fourth Amendment's requirement of a warrant, an officer may search the passenger compartment of a car incident to an occupant's custodial arrest.  New York v. Belton, 453 U.S. 454, 460 (1981).  Such a search incident to an arrest must be "substantially contemporaneous with the arrest."  Stoner v. California, 376 U.S. 483, 486 (1964); United States

v. Barnett, 407 F.2d 1114, 1119-20 (6th Cir.), cert. denied, 395 U.S. 907 (1969). An officer may search the passenger compartment of a car incident to the defendant's arrest even when the officer did not stop the defendant until after the defendant had left his vehicle. Thornton v. United States, 541 U.S. 615, 621 (2004). In Thornton, the Court reasoned that the defendant was a "recent occupant" and that "[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." Id. An arrested individual who is "outside of, but still in control of, the vehicle" is no less likely to try to "lunge for a weapon or to destroy evidence" than an individual seated inside the vehicle. Id.

In Arizona v. Gant, the Supreme Court circumscribed the broad interpretation that had been given to the search incident to arrest exception by holding that "Belton does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." 129 S. Ct. 1710, 1714, 1719 (2009). Accordingly, the Court affirmed the Arizona Supreme Court's suppression of cocaine seized from a jacket in the backseat of Gant's car pursuant to a search of the passenger compartment while Gant was handcuffed in the back of a patrol car following his arrest for driving on a suspended license. Id. Nevertheless, the Court also concluded that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." Id. The Court noted that in numerous cases involving the arrest of the vehicle's occupant for a traffic violation, this prong of the search incident to arrest exception will not apply because "there will be no reasonable basis to believe the vehicle contains relevant evidence." Id. at 1719. In other cases, such as those where a drug offense provides the basis for arresting the occupant, "the

12

offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." Id.

   In the present case, Trooper Robe arrested the Defendant on the felony drug warrant, handcuffed him, and secured him in the back of the patrol car before searching the rental car. Unquestionably, under the Supreme Court's holding in Gant, the car could not be searched incident to the Defendant's arrest in order to insure the safety of the officers. See id. The Government argues that the officers could properly conduct an "evidence-gathering" search incident to the Defendant's arrest on a felony drug warrant, even though the Defendant could not reach the car. In this regard, the Court observes that the evidence in question was seized from luggage located in the trunk of the rental car. The Government contends that in conducting an evidence-gathering search incident to arrest, the officers could search any location, including the trunk, where drugs could reasonably be found.

   Even if the officers could properly search the passenger compartment of the car for evidence relating to the Defendant's arrest on drug charges, they could not search the trunk of the car pursuant to the search incident to arrest exception. The line of cases governing the search incident to arrest exception, beginning with Chimel v. California, 395 U.S. 752 (1969), permit officers to "'search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" Gant, 129 S. Ct. at 1714, 1716 (quoting Chimel, 395 U.S. at 763)). "That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." Gant, 129 S. Ct. at 1716.

13

The trunk of the vehicle is not a place within the arrestee's immediate control.

The Supreme Court has recognized that the justification for an evidence-gathering search incident to arrest does not necessarily flow from the reasoning in Chimel because the defendant could no longer reach the evidence to destroy it. Id. at 1719. Nevertheless, the Supreme Court has permitted this type of search, holding that "the offense of arrest will supply a basis for searching *the passenger compartment of an arrestee's vehicle and any containers therein*." Id. (emphasis added); see also id. at 1731 (Breyer, J., dissenting) (questioning "why an evidence-gathering search incident to arrest should be restricted to the passenger compartment" because this type of search is no longer tied to the need to preserve evidence); Belton, 453 U.S. at 459 (limiting the search incident to arrest to the passenger compartment and containers therein). Thus, the officers in the present case could not properly seize the drugs from the luggage in the trunk of the rental car in an evidence-gathering search incident to the Defendant's arrest.

The Court notes that the automobile exception to the warrant requirement provides that "[i]f there is probable cause to believe that a vehicle contains evidence of criminal activity," an officer may search "any area of the vehicle in which the evidence might be found." Gant, 129 S. Ct. at 1721 (citing United States v. Ross, 456 U.S. 798, 820-21 (1982)); United States v. Mans, 999 F.2d 966, 969 (6th Cir.) (when "police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any contents located within it"), cert. denied, 510 U.S. 999 (1993). The mobility of an automobile as well as the reduced expectation of privacy stemming from the fact that automobiles are highly regulated gives rise to this automobile exception to the warrant requirement. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). As long as the vehicle is mobile and police have probable cause to believe that it contains evidence of the crime,

no exigent circumstances need be present. Id.; see also Maryland v. Dyson, 527 U.S. 465, 466-67 (1999); United States v. Cope, 312 F.3d 757, 775 (6th Cir. 2002).

Probable cause, which is assessed by viewing the totality of the circumstances, is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). In the present case, Trooper Robe's Original Incident Report [Exhibit 2] states that the arrest warrant for the felony of dangerous drugs was dated January 9, 2009. Trooper Robe testified that the Defendant was driving a rental car and that the Defendant showed him the rental agreement at the time he requested the Defendant's driver's license and registration. Both the video recording [Exhibit 1] and the incident report [Exhibit 2] reflect that the three occupants' accounts of their travel plans did not match. Looking at the totality of the circumstances known to Trooper Robe at the time he searched the car, the Court finds that Trooper Robe did not have probable cause to believe that the rental car contained drugs on February 19, 2009. Cf. United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998) (upholding search of engine compartment of rental car based upon probable cause stemming from an informant's tip that the defendant would be traveling westbound on the interstate in a certain vehicle with a female passenger and with methamphetamine in his possession); United States v. Hayes, No. 89-5729, 1990 WL 8085, *2 (6th Cir. Feb. 5, 1990) (holding search justified under automobile exception when defendant drove to drug transaction in vehicle that was searched). Accordingly, the Court also finds that the search of Defendant Thompson-Bey's rental car does not fall within the automobile exception to the warrant requirement even though that exception would permit a search of the trunk.

*(2) Inventory Search*

The Government also contends that the officers properly searched the Defendant's rental car in substantial compliance with the Michigan State Police inventory policy. "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 371 (1987). "After lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search. Such inventory searches 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998) (quoting Bertine, 479 U.S. at 372). An inventory search must be carried out according to standard police procedures. Id. In general, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 374 (1987); Lumpkin, 159 F.3d at 987 (holding that although the inventory policy was not a part of the record, the officer's undisputed testimony was sufficient to show that the vehicle was searched in good faith pursuant to the standard procedures). Although an inventory search cannot be conducted for the purpose of investigation, an officer's subjective suspicion that the vehicle contains contraband does not invalidate an inventory search that is otherwise proper. Id.

The Defendant challenges the search of the rental car pursuant to the inventory exception to the warrant requirement, contending that (1) the Michigan State Police inventory policy gives too much discretion to the searching officer to qualify for the inventory exception, (2) the officers searched the rental car prior to impounding it and, therefore, were not conducting an inventory search as a matter of fact, and (3) the officers failed to comply with the Michigan State Police inventory policy. He also maintains that neither the inevitable discovery doctrine or the

<u>Herring</u> exception to the exclusionary rule act to save this illegal search.

*(i) Officer discretion in executing an inventory search*

The Defendant argues that the inventory search authorized by the Michigan State Police inventory policy violates the Fourth Amendment because it permits officer discretion in whether to impound and inventory the vehicle or to allow its removal by another licensed driver. He asserts that the presence of this discretion allows officers to use the inventory search as a general investigatory tool.

An inventory search must proceed pursuant to "standardized criteria" or "established routine" in order to protect against the use of inventory searches as "a ruse for a general rummaging in order to discover incriminating evidence." <u>Florida v. Wells</u>, 495 U.S. 1, 4 (1990). Part of the reasoning behind admitting evidence discovered in an inventory search is that such searches are part of routine police procedures and, thus, not arbitrarily used as an investigative tool. <u>See</u> <u>Bertine</u>, 479 U.S. at 372-73. The Supreme Court has held that an officer may properly exercise discretion on whether to impound a car "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." <u>Id.</u> at 375; <u>United States v. Kimes</u>, 246 F.3d 800, 804 (6th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1085 (2002). "The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." Wells, 495 U.S. at 4. For example, in <u>Bertine</u>, the Court found the officer's discretion "was exercised in light of standard criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." <u>Bertine</u>, 479 U.S. at 375-76. In <u>Kimes</u>, the court noted that the officers would permit the driver's relatives

17

or friends to take the car if they were present or the driver could contact them and they could arrive promptly. Kimes, 246 F.3d at 804 (holding that the officers' discretion in conducting the inventory search did not defeat the inevitable discovery doctrine).

In the present case, Trooper Robe testified that the Michigan State Police inventory policy ("inventory policy") permitted him to release the car to a licensed driver on the scene. He stated that the policy permitted eighteen hours to elapse before an abandoned vehicle is towed but that cars unable to be driven away by persons taken into custody must be moved within a reasonable time, which he believed would be one hour. The Government introduced the inventory policy as an exhibit [Exhibit 4] to the suppression hearing. The inventory policy provides that when the driver of the vehicle is arrested and the police are not seizing the vehicle as evidence or for forfeiture purposes, the officer shall permit a "properly licensed passenger" to take the vehicle if the driver authorizes the passenger to take the vehicle and if "the passenger would not violate any law by doing so." "If a vehicle [on a limited access highway] is not turned over to a passenger or immediate removal cannot be arranged, the vehicle shall be inventoried and impounded as provided" in the inventory policy. Finally, the inventory policy provides that "[i]f a vehicle will be left unattended following the custodial arrest of the driver, the enforcement member may have the vehicle immediately removed. Such vehicles shall be inventoried and impounded as provided in this Order." The Defendant argues that the term "may" in this last provision makes the policy discretionary.

The Court finds that the present inventory policy does not give unguided discretion to officers in determining whether to impound a vehicle. First, the policy provides that the officer "shall" release the car to a passenger if (1) the driver authorizes such release, (2) the passenger has

18

a valid driver's license, and (3) the passenger would not violate any law in taking custody and removing the vehicle. The policy states that if the vehicle cannot be turned over to a passenger or immediately removed, the officer "shall" inventory and impound the vehicle. Finally, although the provision for vehicles left unattended after the driver's custodial arrest appears to give some discretion to the officer with the use of the term "may," the next sentence removes any discretion by stating that such unattended vehicles "shall be inventoried and impounded[.]" Accordingly, the Court finds that the present inventory policy supplies sufficient guiding criteria to officers encountering vehicles involved in custodial arrests to prevent the use of the inventory policy merely upon suspicion of criminal activity. See Bertine, 479 U.S. at 375-76; Kimes, 246 F.3d at 804. The challenged portion of the inventory policy does not violate the Fourth Amendment as written.


*(ii) Was this an inventory search?*

The Defendant argues that the instant search of his rental car was conducted before the vehicle was impounded or otherwise in the lawful custody of the police and, thus, the officers were not conducting a valid inventory search when they discovered the contraband. He cites to South Dakota v. Opperman, for the premise that an inventory search is reasonable when conducted incident to a lawful impoundment and not as "a pretext concealing an investigatory police motive." 428 U.S. 364, 3100 (1976). He argues that Trooper Robe's testimony and the video recording from Trooper Robe's in-car camera reveal that the decision to tow the rental car was made after it was searched, rather than the search resulting from the decision to tow.

In order to comport with the Fourth Amendment, officers performing an inventory search must not be "act[ing] in bad faith or for the sole purpose of investigation" but, instead, must

be "following standardized procedures[.]" <u>Bertine</u>, 479 U.S. at 372. "However, the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search." <u>United States v. Smith</u>, 510 F.3d 641, 651 (6th Cir. 2007). Inventory searches that are "objectively justifiable" without regard to the executing officer's subjective intent are permissible under the Fourth Amendment. <u>Kimes</u>, 245 F.3d at 805. Moreover, a valid inventory search of a vehicle may only take place if law enforcement has "'lawfully tak[en] custody of a vehicle." <u>Id.</u> (quoting <u>Lumpkin</u>, 159 F.3d at 987).

        In the present case, Trooper Robe testified that the inventory policy required him to impound the Defendant's car because neither of the passengers could take custody of the car without violating Michigan law. Trooper Robe determined that the passengers did not have valid driver's licenses pursuant to computer checks conducted by Trooper Kiser prior to the search of the car. Trooper Robe testified that either he or Trooper Kiser called Star Towing sometime during the stop. The in-car video [Exhibit 1] shows that Trooper Robe began searching the passenger compartment of the car at 19:27:32 hours and that Star Towing arrived around thirty-four minutes later at 20:03:35 hours. Trooper Robe testified that it would typically take Star Towing fifteen to twenty minutes to arrive at that location. He stated that the car was not searched again after it was towed.

        Initially, the Court finds that the rental car was lawfully in police custody at the time that it was searched, even though it had not yet been towed to an impound lot. The officers had arrested the Defendant and had determined that neither of the passengers could take custody of the car. Although the towing company was not contacted until after the search had begun, the inventory policy states that a vehicle not turned over to a passenger "shall be inventoried and impounded[,]" clearly contemplating that the inventory might take place before the impoundment. Although certain

20

facts considered in isolation–such as the facts that the officers did not document the items contained in the luggage as they searched it and did not call for the tow truck before beginning the search–might support a finding that the officers searched the car merely as an investigatory tool, the totality of the circumstances show that the officers were conducting an inventory search. The officers did not begin the search until they had determined that no one on the scene could take custody of the car. The car was not subsequently inventoried after it was towed. The Court finds that the search of the car was an inventory search and was not conducted for the sole purpose of investigation.

### (iii) Compliance with inventory policy

The Defendant also contends that the officers failed to comply with the inventory policy because they did not give the occupants the opportunity to contact someone to come get the car and they did not complete Form UD-91 listing the contraband. He maintains that this departure from the requirements of the inventory policy reveal that the inventory search was just a pretext to search the car. The Government contends that the car was searched in substantial compliance with the inventory policy. Moreover, it maintains that Trooper Robe's documentation of the contraband on his incident report rather than the Form UD-91 does not invalidate the discovery of the contraband.

In the present case, Trooper Robe testified that the Michigan State Police inventory policy ("inventory policy") permitted him to release the car to a licensed driver on the scene or who could arrive in a reasonable time, which he believed would be one hour. He stated that neither passenger of the car had a valid driver's license. He acknowledged that he did not give the car's

occupants the opportunity to attempt to contact someone to move the car, but he stated that in his prior experience of impounding rental cars, the rental companies preferred that rental cars not be released to a person not on the rental agreement. He stated that only the Defendant was listed on the rental agreement.

The inventory policy suggests that an officer can permit a person other than the passenger to take custody of a vehicle following the arrest of the driver by stating that the vehicle shall be impounded if it is "not turned over to a passenger or immediate removal cannot be arranged." The policy does not require the officer to permit the occupants of the car to arrange for the vehicle to be removed. Thus, Trooper Robe's failure to permit the occupants of the rental car to contact someone to retrieve it is not a violation of the inventory policy. Additionally, in light of the fact that this was a rental car for which the rental agreement extended only to the Defendant, the Court finds that Trooper Robe had a legitimate, non-investigatory reason for not permitting the occupants to contact a third party to take the car. This factual finding supports the Court's determination that the officers did not conduct the inventory search merely as a pretext for investigating potential crimes.

The inventory policy requires that an officer inventorying a vehicle "shall" complete a Form UD-91, listing "[a]ll items of an unusual nature located in the vehicle . . ., including evidence or contraband." Trooper Robe testified that he did not complete the Form UD-91 in this case but, instead, listed the contraband on his incident report. The Government acknowledges that Trooper Robe did not comply with this provision of the inventory policy but states that this provision was ministerial and Robe's failure to follow it did not invalidate the inventory search. In Kimes, the Court of Appeals for the Sixth Circuit analyzed whether an inventory policy that permitted officers

22

to document only those items considered valuable provided too much discretion to officers to comport with the Fourth Amendment. 246 F.3d at 805. In concluding that the officers's discretion in the comprehensiveness of the inventory list did not violate the Fourth Amendment, the Court held that the "post-discovery listing of items discovered in a search . . . has no pertinent connection to the discovery itself." <u>Id.</u> In other words, the court held that the officers' failure to extensively document the items found in the defendant's vehicle had no bearing upon whether the search was valid at the moment the items were discovered. <u>Id.</u> Likewise, the Court finds that Trooper Robe's listing of the contraband on an incident report rather than a Form UD-91 as required by the inventory policy does not invalidate the inventory search. Although Trooper Robe's failure to complete the appropriate form could suggest that he was not conducting an inventory search at the time, the Court continues to find that the record in this case, like in <u>Kimes</u>, "does not compel a finding of pretext." <u>Id.</u> Considering the totality of the circumstances, the Court finds that the officers conducted an inventory search of the rental car. Accordingly, the Court recommends that the District Court deny the Defendant's motion to suppress the evidence seized from the car as it was properly seized pursuant to the inventory exception to the warrant requirement.

### *(iv) Inevitable discovery*

In the event that the District Court finds that the search conducted by the officers was not a valid inventory search, the Court will briefly consider whether the evidence would have been inevitably discovered subsequent to the vehicle's impoundment. The doctrine of inevitable discovery provides that improperly seized evidence is admissible if it would have been inevitably discovered by valid means. <u>Nix v. Williams</u>, 467 U.S. 431, 443-44 (1984); <u>United States v.</u>

Kennedy, 61 F.3d 494, 497-98 (6th Cir. 1995). "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." Williams, 467 U.S. at 444. "For the inevitable discovery exception to apply, it must be demonstrated that the evidence inevitably would have been acquired through lawful means had the government misconduct not occurred." Kennedy, 61 F.3d at 497.

The Court finds that the Michigan State Police would have inevitably discovered the drugs in the Defendant's luggage if the officers had not searched the car immediately following the Defendant's arrest. The Court finds that Trooper Robe could not have released the Defendant's rental car to either Esther McCalebb-Pippin or John Smith because neither had a valid driver's license. The policy did not require the officers to permit the passengers to find a third party to take the car. In light of the fact that the car was rented and that the rental agreement listed only the Defendant, the Court finds that the officers would not have exercised their discretion to permit a third party to retrieve the car. The Defendant suggests in a footnote that the occupants could have contacted someone from the rental agency to get the car, but this possibility was not raised at the suppression hearing and, consequently, the Court heard no evidence regarding it. Nonetheless, Trooper Robe testified that his prior experience was that rental companies preferred that a car be impounded when it could not be turned over to a licensed driver who was listed on the rental agreement. Accordingly, the Defendant's suggestion that the passengers could have contacted a rental agent to retrieve the car does not alter the Court's finding that the officers would have impounded the car following the Defendant's arrest. Accordingly, the Court finds by a preponderance of the evidence that the rental car would have been impounded and inventoried even

24

if it had not been searched at the scene of the traffic stop.

*(v) Application of the exclusionary rule*

Finally, the Government argues that the exclusionary rule should not be applied in this case because Trooper Robe complied with the spirit of the inventory policy even though he failed to comply with the ministerial requirement that he document the contraband on a specific form. The Defendant contends that the search of his rental car was the result of a recurring and systemic decision to employ inventory searches when a search incident to arrest was prohibited by the Gant decision. As support for this contention, the Defendant points to Trooper Robe's testimony that the Michigan State Police Department had relied on the inventory policy more heavily following the Gant decision.

The purpose of excluding evidence gained in violation of the Fourth Amendment is to deter future Fourth Amendment violations by law enforcement. United States v. Calandra, 414 U.S. 338, 347-48 (1974) (observing that the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect"). Accordingly, the Supreme Court has carved out exceptions to the exclusionary rule such as the good faith exception set out in United States v. Leon, 468 U.S. 897, 922 (1984). In Herring v. United States, the Court declined to apply the exclusionary rule to a Fourth Amendment violation stemming from the negligence of police personnel in failing to remove a withdrawn arrest warrant from the computer, finding that an "error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the [exclusionary] rule in the first place." 129 S. Ct. 695, 702 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently

deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. In other words, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id.

In the present case, Trooper Robe's decision to search the Defendant's rental car was not the result of negligence but, instead, was the result of his accurate determination that the inventory policy required him to impound the car because the passengers could not legally take custody of it. Although Trooper Robe's testimony suggests that the department intended to use the inventory policy to perform searches that would no longer be justified incident to the suspect's arrest in the wake of the Gant decision, neither that testimony nor Trooper Robe's conduct reveal that inventory searches were being conducted when they were not permitted by the inventory policy. Accordingly, the Court finds no bad faith on the part of law enforcement. The Court finds that the exclusionary rule should not be applied in this case but questions whether Herring, which turns upon police negligence, applies. Instead, the Court finds, as discussed in the previous section, that the exclusionary rule should not be applied because the evidence in question would have been inevitably discovered in an inventory search subsequent to the impoundment of the rental car. See Williams, 467 U.S. at 444 (questioning the applicability of the exclusionary rule when the evidence "ultimately or inevitably would have been discovered by lawful means"). The Court recommends that the defendant's motion to suppress evidence [Doc. 115] be denied.

### B. Admissibility of Defendant's Statement

The Defendant argues that a statement he made to the officers following his arrest

and the search of his car but before he was advised about his rights under <u>Miranda</u> must be suppressed because the statement was taken in violation of his right to counsel and was the product of an unlawful search. The Government agrees that all statements by the Defendant following his arrest should be suppressed with the exception of a voluntary spontaneous utterance by the Defendant in which he claimed that a clear bag containing drugs was his. The Government acknowledges that the Defendant was in custody at the time of this statement and that he had not received the <u>Miranda</u> warnings at the time he made this utterance. It argues that because the statement was voluntary and not made in response to questions by the officers, it is admissible though unwarned. The Defendant responds that he was questioned after his arrest, thereby invalidating the statement. The Defendant also asserts that his statements[1] should be suppressed because the officers exceeded the scope of the traffic stop in questioning him after learning about the arrest warrant but before arresting him.

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. <u>Miranda v. Arizona</u>, 384 U.S. 436,478-79 (1966); <u>see also United States v. Salvo</u>, 133 F.3d 943, 948 (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994); <u>Salvo</u>, 133 F.3d at 948.

---

[1]The Defendant's argument regarding the scope of the traffic stop appears to relate to the statements he made to the officers prior to his arrest because the Government has agreed to the suppression of any "post-arrest" statements other than the Defendant's statement regarding the clear bag made after the search of the luggage.

For purposes of analysis, the Court will group the Defendant's statements into two categories according to the chronology of the stop: (1) the Defendant's answers to the officers' questions prior to his arrest, and (2) the Defendant's post-arrest statements. With regard to the second category, the parties agree that all the Defendant's post-arrest statements should be suppressed with the exception of his statement regarding a clear bag containing drugs, which statement was made following the search of luggage from the trunk of the rental car. Accordingly, the Court will limit its analysis of the Defendant's post-arrest statements to the single statement that is at issue.

*(1) Pre-arrest Statements*

The officers stopped the Defendant's rental car at 19:12:19 hours on the video recording. He was arrested at 19:23:17 hours. The Defendant contends that all the statements he made to the officers from the time they learned of the outstanding arrest warrant, which he contends occurred at 19:16:26,[2] until he was arrested at 19:23:17 should be suppressed because the "detention of the traffic stop had exceeded its proper scope due to the trooper's failure to inform the defendant of the outstanding warrant[.]" The Defendant also asserts that the officers had not advised him of his Miranda rights during this time frame. The Government did not respond to this argument, as it was raised for the first time in the Defendant's supplemental response brief. The Court takes the Defendant's argument to be that he was in custody from the point that the officers learned of the arrest warrant and that he should have been advised of his rights under Miranda at that time.

_____

[2]The Court is not able to tell from the video recording precisely when Trooper Kiser told Trooper Robe that the Defendant had an outstanding arrest warrant. Trooper Kiser returns from the patrol car and stands near Trooper Robe at 19:16:37.

Case 3:09-cr-00064-PLR-HBG   Document 170   Filed 01/12/10   Page 28 of 33   PageID #: 543

Because only custodial interrogation implicates Miranda, 384 U.S. at 478-79, the critical question is when was the Defendant in custody for purposes of the Miranda warnings.

The obligation to administer Miranda warnings to suspects only arises if there has been "such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam). To determine whether an individual is in custody for purposes of Miranda, the Court examines the totality of the circumstances to assess how a reasonable person in that situation would have interpreted the situation. Salvo, 133 F.3d at 948; see also United States v. Swanson, 341 F.3d 524, 528 (6th Cir. 2003). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury, 511 U.S. at 323; Mason v. Mitchell, 320 F.3d 604, 631 (6th Cir. 2003). The "'ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Knox, 839 F.2d 285, 291 (6th Cir. 1988) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted); Swanson, 341 F.3d at 529.

The Supreme Court has held that "persons temporarily detained pursuant to [ordinary traffic] stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). The Defendant seems to contend that because he could have been arrested on the warrant but was not for a time period, he was detained beyond the scope of the traffic stop. See United States v. Blum, 614 F.2d 537, 540 (6th Cir. 1980) (holding the continued detention of the defendant in a police car where he was questioned by a uniformed officer violated both the Fourth Amendment because the detention was beyond the scope of the investigatory or Terry stop and the Fifth Amendment because the defendant was subjected to custodial interrogation without being

29

advised of the <u>Miranda</u> warnings). In the present case, the Court first finds that the Fourth Amendment was not violated because the officers were still conducting the traffic stop up to the point at which they arrested the Defendant.

"The scope of activities during an investigatory detention must reasonably be related to the circumstances that initially justified the stop." <u>United States v. Richardson</u>, 949 F.2d 851, 856 (6th Cir. 1991). An officer who stops a person for a traffic violation based upon probable cause can detain the person while he or she completes a records check and issues a citation. <u>See</u> <u>United States v. Wellman</u>, 185 F.3d 651, 656 (6th Cir. 1999). Officers may order both the driver, <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 110 (1977), and the passengers, <u>Maryland v. Wilson</u>, 519 U.S. 408, 414 (1997), out of the car during a traffic stop. Questions about a suspect's identity and travel plans are reasonable during a traffic stop. <u>United States v. Hill</u>, 195 F.3d 258, 268 (6th Cir. 1999); <u>United States v. Potts</u>, No. 97-6000, 1999 WL 96756, at *3 (6th Cir.), <u>cert. denied</u>, 528 U.S. 822 (1999) (observing that "an officer is free to ask traffic-related questions, and questions about a driver's identity, business and travel plans during the course of a traffic stop"). In the present case, Trooper Robe officers gathered information about the occupant's identities and questioned them about their travel plans in the time preceding the Defendant's arrest. The fact that Trooper Robe could have arrested the Defendant perhaps as much as seven minutes before he did does not mean that he was required to do so. Accordingly, the Court finds that the Defendant was not detained beyond the scope of the traffic stop at the time the officers learned about the arrest warrant.

*(2) Post-arrest Statement*

The Defendant was arrested and placed in the patrol car before the search of his car.

The Court finds and the parties agree that the Defendant was in custody for <u>Miranda</u> purposes at this time. While searching the trunk of the car, the officers placed luggage taken from the trunk onto the hood of the patrol car and searched it. The Defendant did not have anything blocking his view of this search. Trooper Robe found crack cocaine in luggage belonging to Mr. Smith, and Smith was arrested. Trooper Robe subsequently found a clear plastic bag containing drugs in another piece of luggage belonging to the Defendant. Following this discovery, the officers entered the front seat of the patrol car. The video recording shows that just before the officers' entered the patrol car, someone off camera took the clear bag containing the drugs from the hood of the patrol car. The Court finds that one of the officers probably took the clear bag into the patrol car. Without being asked any questions by the officers, the Defendant told them that the clear bag was his. The Government contends that the use of this unwarned statement would not violate the Fifth Amendment because it was a voluntary and spontaneous utterance by the Defendant and not the product of interrogation.

"'Volunteered statements of any kind are not barred by the Fifth Amendment[.]'" <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980) (quoting <u>Miranda</u>, 384 U.S. at 478). Instead, "the <u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent[,]" which is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980) (footnotes omitted).

In the present case, the Defendant's statement that the drugs in the clear bag were his was not the result of police questioning. Moreover, the Court finds that the officers actions of

31

searching the luggage within the Defendant's view and taking the clear bag into the patrol car was not the "functional equivalent" of interrogation. The officers did not make any comments or exclamations upon discovering the clear bag that would suggest to the Defendant that he should explain the bag or its contents. C.f., Fleming v. Metrish, 556 F.3d 520, (6th Cir.) (Clay, J., dissenting in part) (observing that the officers placed the handcuffed defendant "in position to observe their search [of his residence and property], and celebrated their discovery of the shotgun right in front of him," exclaiming that they had got the defendant now and encouraging the defendant to "'do the right thing'" and "'get with the program'"), cert. denied, 130 S. Ct. 103 (2009). The Court finds that the Defendant's statement claiming the clear bag was volunteered. It is, therefor, admissible despite the fact that the officers had not yet given the Defendant the Miranda warnings. Finally, the Court finds that because the officers properly conducted the inventory search of the Defendant's trunk and luggage, the Defendant's statements were not the fruit of an illegal search. The Court recommends that the Defendant's request for the suppression of his statements be denied.

## V. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds no basis to suppress the evidence resulting from search of the Defendant's rental car. Additionally, the Court finds that the Defendant's spontaneous utterance regarding the ownership of a clear bag is admissible. By agreement of the parties, all other post-arrest statements by the Defendant during the course of the stop on February 19, 2009, should be suppressed. The Court

finds all pre-arrest statements to be admissible. For the reasons set forth herein, it is

**RECOMMENDED** that Defendant's suppression motions [**Docs. 115 and 118**] be **DENIED**.[3]

Respectfully submitted,

_____ s/ H. Bruce Guyton _____
United States Magistrate Judge

---

[3]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).